1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

| | |
|---|---|
| YONGGANG LI,<br><br>                    Plaintiff,<br><br>     v.<br><br>JAMES FU BIN LU,<br><br>                  Defendant. | CASE NO. 3:24-cv-05604-DGE<br><br>ORDER GRANTING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 10) AND CONFIRMING ARBITRATION AWARD (DKT. NO. 1.) |

11
12
13
14
15
16

## I    INTRODUCTION

Before the Court is Plaintiff's Motion for Default Judgment.  (Dkt. No. 10.)  This arises from Plaintiff's Petition to Confirm an Arbitration Award.  (Dkt. No. 1.)  Plaintiff seeks to enforce a foreign arbitral award in the amount of USD $30,000,000, plus interest and costs. (Dkt. No. 10 at 2–3.)  Defendant has failed to appear.  For the reasons that follow, the motion is GRANTED and the arbitration award is CONFIRMED.

## II    BACKGROUND

1.  <u>Complaint and Service</u>

1    The following background information is taken from the Court's previous order to show

2    cause (Dkt. No. 11):

3    Plaintiff commenced this action on July 26, 2024 to enforce an arbitral award issued in

4    Singapore. (*See* Dkt. No. 1.) Plaintiff is a citizen of Hong Kong, and Defendant "is the personal

5    guarantor of a $30,000,000 loan and settlement agreement for a Washington entity, Longview

6    Capital Holdings, LLC ("Longview")." (*Id.* at 2–3.) Defendant is also "the sole member, or one

7    of the members, of Longview" and does business in Washington. (*Id.* at 2.) The Complaint

8    provides further information about Defendant's citizenship and place of residence:

9        Defendant Lu is a U.S. citizen who, upon information and belief, resides at 428 East
         Street, Suite E, Grinnell, Iowa 50112 and may be served at that address. Defendant Lu
10       has also represented he may reside in alternate locations, such as Beijing, but has
         consistently represented he maintains a residence in Grinnell, Iowa as shown in the
11       Settlement Agreement.

12    (*Id.* at 3.) Per the terms of the award, Plaintiff asks this Court to enter judgement for a principal

13    amount of $30,000,000 USD, plus $5,763,013.70 in interest at a 20% rate accrued from June 16,

14    2023 to June 1, 2024, plus further interest at a 20% rate accruing until the judgement is collected.

15    (*Id.* at 4–7.)

16    Plaintiff asserts that this Court has jurisdiction under 9 U.S.C. § 203, which grants

17    original jurisdiction to the district courts of the United States for "[a]n action or proceeding

18    falling under the Convention," which is a reference to the "Convention on the Recognition and

19    Enforcement of Foreign Arbitral Awards of June 10, 1958." (*See id.* at 2; 9 U.S.C. § 201.)

20    Venue is proper in the Western District of Washington, Plaintiff argues, under 9 U.S.C. § 204,

21    which specifies that an action under 9 U.S.C. § 203 "may be brought in any such court in which

22    save for the arbitration agreement an action or proceeding with respect to the controversy

23    between the parties could be brought." (*See id.* at 3.) Alternatively, because of Defendant's

24

1  contacts and the nature of the dispute, venue is proper here under 28 U.S.C. §§ 1391(b)(2) or

2  (b)(3).  (*See id.*)

3        Plaintiff filed proof of service on September 25, 2024.  (Dkt. No. 7.)  The affidavit states

4  that process was served "at the individual's residence or usual place of abode with Jane Doe, a

5  person of suitable age and discretion who resides at 588 [B]ell st unit 2508, [S]eattle, WA 98121,

6  on 08/28/2024 at 5:53 PM, and [the process server] mailed a copy to the individual's last known

7  address."  (*Id.*)  The affidavit further states as follows:

8        I delivered the documents to an individual who refused to give their name who identified
         themselves as the subject's spouse, co-resident.  The individual accepted service with
9        direct delivery.  The individual appeared to be a brown-haired white female contact 25-35
         years of age, 5'6"-5'8" tall and weighing 120-140 lbs.  [S]he accepted service saying she
10       was the wife then threw it back and said she's not her and I left the papers there.  (*Id.*)

11       2.  <u>Supplemental Information</u>

12       In light of the above, the Court ordered Plaintiff to provide additional information to

13  substantiate that service was made properly and that the Court has jurisdiction in this matter.

14  (Dkt. No. 11.)  Plaintiff responded as follows:

15       Plaintiff has filed actions in state courts in Washington, Indiana, and Iowa against

16  Longview, LLC and related entities seeking to recover the balance of the unpaid loan.  (Dkt. No.

17  12 at 2–3.)  Lu is not a party to those "entity actions."  (*Id.* at 3 & n.3.)  Through these entity

18  actions Plaintiff has attempted to serve Lu, the registered agent for Longview, at various

19  addresses.  Longview's website describes it as the "family office of James F. Lu" with an address

20  of "PO Box 61311 Seattle, Washington 98141"—but the zip code 98141 does not exist.[1]  (*Id.*)

21  Despite Lu's past representation that he resides at the Grinnell, IA address, Plaintiff suspects that

22

23  _____

24  [1] Plaintiff believes that this is a typo and the correct zip code is 98101, which corresponds to the
    closest Post Office to the Bell Street address. (Dkt. No. 12 at 2 & n.4.)

to be untrue because the address is multifamily housing owned by Longview, and Lu stated in

affidavits that he lives outside the United States. (*Id.*)  Plaintiff attempted to serve Lu at an

address in Longview, WA listed in Longview's corporate registration with the Washington

Secretary of State, but Plaintiff discovered through that process that Lu sold the property at least

four years ago. (*Id.* at 3–4.)  After filing this action, Plaintiff contacted counsel for Longview in

the entity actions to ask if he would accept service on behalf of Lu, but he refused. (*Id.* at 4.)

Ultimately, Plaintiff attempted service in this action at the Bell Street, Seattle address

because in a related proceeding in Hong Kong, Lu filed an affidavit on October 26, 2023 stating

that he and his wife own a condominium at that address. (*Id;* Dkt. No. 12-1 at 120–123.)

Plaintiff obtained the Warranty Deed filed with King County in 2015 that lists James Lu and his

wife Qingni Li as grantees of the condominium. (Dkt. No. 12-1 at 136.)[2]  In 2015, the couple

signed a Deed of Trust for the property, which includes form language stating that they will

occupy the property as their "principal residence" within 60 days of purchase, continuing for "at

least one year after the date of occupancy." (*See id.* at 139, 145, 152.)  As noted above, the

individual who answered the door at the Bell Street address initial identified herself as Lu's wife

and accepted service, but then attempted to reject service. (Dkt. No. 7.)

### III     DISCUSSION

1.  <u>Service Was Properly Effected</u>

Service on an individual within the United States is governed by Federal Rule of Civil

Procedure 4(e).  Service may be made under Rule 4(e)(1) in a manner consistent with state law,

or under 4(e)(2)(B) by "leaving a copy of each at the individual's dwelling or usual place of

---

[2] Next to the names of Mr. Lu and Ms. Li on the Warranty Deed is a handwritten note stating that they are "a married couple."  (Dkt. No. 12-1 at 136.)

abode with someone of suitable age and discretion who resides there."  Both provisions are roughly equivalent here, as Washington law allows service on an individual "to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein."  Wash. Rev. Code Ann. § 4.28.080(16) (West 2015).

The Court finds that there is sufficient evidence that the Bell Street address was one of Mr. Lu's "dwelling place[s]" and that the individual served there, who initially acknowledged being his wife, is a suitable person residing there.  Plaintiff proffered a warranty deed showing that Mr. Lu and Ms. Li jointly own the condo as a married couple.  (Dkt. No. 12-1 at 136.)  They signed a deed of trust indicating that the condo would be their "principal residence," at least for a year starting in 2015.  (*Id.* at 145, 152.)  As recently as October 2023 Mr. Lu reaffirmed that he continues to own the property, when he attested that "[t]his property is owned by me and my wife Ms Li Qingni."  (Dkt. No. 12-1 at 123.)  And when the process server attempted to serve process at that location, the person who answered initially identified themselves as the "spouse, [and] co-resident" of Mr. Lu.  (Dkt. No. 7.)  Plaintiff further notes that, to his knowledge, this address is the only one Mr. Lu owns in his own name, as opposed to Longview.  (Dkt. No. 12 at 5.)  Taken together, these facts constitute sufficient circumstantial evidence to find that the Bell Street condo is a dwelling place of Mr. Lu's and that his wife resides there.

Courts have previously approved of service in similar circumstances.  In *Stars' Desert Inn Hotel & Country Club, Inc v. Hwang*, 105 F.3d 521, 522–524 (9th Cir. 1997) the Ninth Circuit found that service on a Taiwanese citizen was properly made by serving a security guard at a gated community in Beverly Hills who acknowledged that the defendant lived there.  The court also recognized that a person can have more than one dwelling place for purposes of the

rule.  *Id.* at 524.  In *U.S. v. Rose*, 437 F.Supp.2d 1166, 1172–1173 (S.D. Cal. 2006) the court accepted service as proper when made upon an unidentified individual (who a guard identified as a resident) after the individual stated that the defendant "would be home after 7:00 p.m."  While neither of these cases is perfectly analogous to this circumstance, they illustrate that acknowledgment of a defendant's residence by a person on the premises is sufficient for service.  Here, property records indicate that Mr. Lu and Ms. Li own the Bell Street condo together, and the woman who answered the door there identified herself as his spouse and co-resident.  Her subsequent denial that she was Mr. Lu's wife is contrasted by those property records but is consistent with Defendant's efforts to evade service.

It is unknown how much time Mr. Lu spends at the Bell Street condo, as opposed to other places, but that does not preclude proper service, either.  In *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991), the Second Circuit held that service could be made on an address where the defendant spent just 34 days a year.  The defendant was a Saudi Arabian businessman who owned twelve properties around the world and considered Riyadh his domicile, but he listed his New York apartment as a residence on a bail application.  *Id.* at 257–258.  Service was made upon his housekeeper, who confirmed he was in New York.  *Id.* at 255.  Here, even if Mr. Lu considers his primary home to be outside the U.S., he still may be served at his property in Seattle.

Based on the foregoing, the Court finds that service was properly effected.

2.  <u>Personal Jurisdiction</u>

The Court also finds that it has personal jurisdiction over Mr. Lu.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  Based on the evidence

1    discussed *supra*, including Mr. Lu's ownership and residence in a condo in Seattle, the Court

2    likely has general jurisdiction over him.  But even if Seattle is not Mr. Lu's place of domicile,

3    the Court has specific jurisdiction over him for purposes of this suit.  The Ninth Circuit uses a

4    three-prong test to analyze specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate
> some transaction with the forum or resident thereof; or perform some act by which he
> purposefully avails himself of the privilege of conducting activities in the forum, thereby
> invoking the benefits and protections of its laws; (2) the claim must be one which arises
> out of or relates to the defendant's forum-related activities; and (3) the exercise of
> jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–1228 (9th Cir. 2011).  Those

factors are easily satisfied here.  According to incorporation documents filed with the

Washington Secretary of State, Mr. Lu is the registered agent and governor of a Washington

corporation, Longview.  (Dkt. No. 12-1 at 100–110.)  Mr. Lu is the personal guarantor of the

loan issued by Longview that is in dispute in this case.  (Dkt. No. 1 at 2–3.)  Longview's public-

facing website describes it as the "Family Office of James F. Lu" with a mailing address in

Seattle.  (Dkt. No. 12 at 3.)  It cannot be said, by any stretch, that it would unfair or unreasonable

to make Mr. Lu answer a suit in this District when he owns a residence here and conducts

business here.  Thus, the Court is satisfied it has personal jurisdiction.

   3.   Subject Matter Jurisdiction and Venue

   The Court has both federal question and diversity jurisdiction over this dispute.  As

discussed *supra*, 9 U.S.C. § 203 vests the U.S. district courts with original jurisdiction to confirm

foreign arbitral awards.  Under § 204, venue is proper "in any such court in which save for the

arbitration agreement an action or proceeding with respect to the controversy between the parties

could be brought."  Since the loan was issued by a corporation incorporated in this District and

defendant resides in this District, absent the arbitration, an action with respect to non-payment of

1    the loan could have been initiated in this District.  *See Day v. Orrick, Herrington & Sutcliffe,*

2    *LLP*, 42 F.4th 1131, 1141 (9th Cir. 2022) (finding venue proper under § 204 and 28 U.S.C. §

3    1391 in the district of defendant's place of business).  Additionally, Plaintiff is a citizen of Hong

4    Kong and Defendant is a U.S. citizen, and the amount in controversy exceeds $75,000, so

5    diversity exists under 28 U.S.C. § 1332.[3]

6            D. Confirmation of the Arbitral Award and Default Judgment

7                    *1.  Legal Standard*

8            Plaintiff asks the Court to enforce the foreign arbitral award under 9 U.S.C. § 207, by

9    which "[t]he court shall confirm the award unless it finds one of the grounds for refusal or

10   deferral of recognition or enforcement of the award specified in the said Convention."  The

11   statute is framed in mandatory terms, and the Ninth Circuit has recognized that "[c]onfirmation

12   is a summary proceeding that converts a final arbitration award into a judgment of the court."

13   *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def.*

14   *Sys., Inc.*, 665 F.3d 1091, 1094 n.1 (9th Cir. 2011).  There are seven defenses to confirmation

15   enumerated in the New York Convention, but the Ninth Circuit has recognized "a presumption

16   favoring upholding international arbitration awards under the Convention."  *Id.* at 1096–1097 &

17   n.2.  The defendant bears a "substantial" burden to prove those defenses because "the public

18   policy in favor of international arbitration is strong," and the defenses are construed narrowly.

19   *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010).

20           However, because of Defendant's non-participation, this confirmation proceeding arises

21   on a default judgment posture, and Defendant has not offered argument that any of these

22   _____

23   [3] Defendant's dual citizenship does not defeat diversity.  *Mutuelles Unies v. Kroll & Linstrom*,
     957 F.2d 707, 711 (9th Cir. 1992).

24

defenses apply.  The Court asked Plaintiff to brief whether the multi-factor test set out in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) applies in this circumstance.  (*See* Dkt. No. 11.)  In response, Plaintiff noted that district courts in the circuit have been inconsistent in this respect. *Compare EXA-USA, Corp. v. Farnese Terra, Inc.*, No. 22-cv-01429, 2023 WL 2772515 at *3–*5 (N.D. Cal. 2023) (applying *Eitel* only to default judgment on attorney's fees but not to confirm an arbitral award); *with Swift Financial, LLC v. Alabar Const., Inc.*, No. 2:18- cv-02009, 2019 WL 654343 (D. Or. 2019) (applying *Eitel* to the confirmation of an arbitral award).  However, at least one court has explained that "[w]here a respondent fails to appear in an action to confirm an arbitration award, and default has been entered, courts will first consider the appropriateness of entry of default judgment." *UBS Fin. Servs. Inc. v. Harrison*, No. CV-22-00386-PHX-DJH, 2023 WL 3178866, at *2 (D. Ariz. May 1, 2023) (quoting *UBS Fin. Servs., Inc. v. Martin*, 2014 WL 2159280, at *2 (S.D. Cal. May 23, 2014)).

Because the motion pending before the Court is formally one for default judgment, the Court agrees with *Harrison* that the order of operations must first be to enter the default, and then to confirm the award.  Therefore, and erring on the side of caution, the Court will apply the *Eitel* factors as to the default—though it will not relitigate the underlying merits issues that were subject to arbitration.

## 2.  Application of Eitel to Default Judgment

The *Eitel* factors are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel,* 782 F.2d at 1471–1472.

1 | The Court considers each below:

2 |     <u>Factor 1: Possibility of Prejudice to the Plaintiff</u>

3 |     Plaintiff would be highly prejudiced in the absence of a default judgment.  "On a motion for

4 | default judgment, 'prejudice' exists where the plaintiff has no 'recourse for recovery' other than

5 | default judgment."  *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash.

6 | 2014) (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D.

7 | Cal. 2003)).  Here, the underlying loan was made in June 2022, the parties entered into a

8 | Settlement Agreement in May 2023, and Plaintiff is still awaiting payment on those agreements.

9 | (*See* Dkt. No. 12-1 at 8–10.)  Plaintiff has attempted to collect on the loan through various other

10 | suits (*see* Dkt. No. 12 at 2–3), though apparently to no avail.  Plaintiff has exhausted alternative

11 | means of recourse, and factor one weighs in his favor.

12 |     <u>Factors 2 and 3: Merits of Plaintiff's Claims and Sufficiency of Complaint</u>

13 |     The second and third factors are frequently analyzed together.  *Curtis*, 33 F. Supp. 3d at

14 | 1211.  Plaintiff has provided what appears to be an authentic copy of an arbitration award

15 | entered at the Singapore International Arbitration Centre entered on June 1, 2024 between the

16 | same parties in this action, Plaintiff/Claimant Yonggang Li and Defendant/Respondent James F

17 | Lu.  (Dkt. No. 1-1 at 2–10.)  The award orders Respondent to pay Claimant $30,000,000 USD

18 | (or the equivalent in RMB at the prevailing exchange rate on the date of payment), plus 20%

19 | interest from June 16, 2023 to the date of the award, and post-award interest in at a 20% rate

20 | from the date of the award until payment, plus any costs, fees, or expenses.  (*Id.* at 9.)  The award

21 | further declares that Respondent holds assets at Goldman Sachs (Asia) and Citibank Hong Kong

22 | N.A. sufficient to pay the principal plus interest, and orders Respondent to "render[] full

23 | assistance to the Claimant to transfer liquid assets" in those accounts to Claimant.  (*Id.*)

24 |

The complaint states a valid claim for enforcement of this foreign arbitral award under

the FAA, 9 U.S.C. § 207.  (Dkt. No. 1 at 5.)  The presumption in favor of confirmation is strong,

and Defendant has not briefed, let alone proven, any defense to confirmation.  *See Polimaster*,

632 F.3d at 836.  Accordingly, factors two and three weigh in favor of Plaintiff.

Factor 4: The Sum of Money at Stake

The fourth *Eitel* factor "considers whether the amount of money requested is proportional

to the harm caused."  *Sun Life Assurance Co. of Canada v. Est. of Wheeler*, Case No. C19-0364-

JLR, 2020 WL 433352, at *4 (W.D. Wash. Jan. 28, 2020).  "If the sum of money at issue is

reasonably proportionate to the harm caused by the defendant's actions, then default judgment is

warranted."  *Walters v. Statewide Concrete Barrier, Inc.*, Case No. C-04-2559 JSW MEJ, 2006

WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006).  "The Court considers Plaintiff's declarations,

calculations, and other documentation of damages in determining if the amount at stake is

reasonable."  *Marshall Wealth Mgmt. Grp., Inc. v. Santillo*, Case No. 18-CV-03510-LHK, 2019

WL 79036, at *7 (N.D. Cal. Jan. 2, 2019) (quoting *Trung Giang Corp. v. Twinstar Tea Corp.*,

Case No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)).

The principal amount, $30,000,000, is equal to the amount of the unpaid loan.  The

interest rate, 20%, appears rather high.  *Cf.* Wash. Rev. Code 19.52.020 (setting a maximum

legal rate of 12% interest in Washington state); *but see* Wash. Rev. Code 19.52.080 (exempting

transactions for "investment, or business purposes" from usury defense).  Since 20% is the rate

of interest agreed upon by the parties in their Settlement Agreement and enforced by the

arbitrator (Dkt. Nos. 1-1 at 9, 1-2 at 3), the Court cannot say that the interest is disproportionate.

Plaintiff has further requested $250,000 in arbitration fees and costs.  Plaintiff provided a

notarized supplement ("Registrar's Certificate") to the arbitration award, dated July 22, 2024,

1  stating that the parties agreed that the "costs, fees, and/or expenses" called for in the arbitration

2  award would be USD $250,000, and adopting that amount as the costs referenced in paragraph

3  21.7 of the Consent Award.  (Dkt. No. 1-3 at 5–8.)  Based on the agreement of the parties and

4  incorporation of that sum into the arbitral award, the Court finds that the $250,000 measure of

5  costs is proportionate.  Therefore, factor four weighs in Plaintiff's favor.

6                    Factors 5: The Possibility of a Dispute Concerning Material Facts

7          It is highly unlikely that a dispute concerning material facts would exist in this case.  The

8  Parties already agreed to a settlement and completed arbitration.  The underlying facts are

9  simple—an unpaid loan, and the Court is unaware of any outstanding factual questions that cast

10 doubt on Plaintiff's ability to recover.  Factor five favors Plaintiff.

11                   Factor 6: Excusable Neglect

12         There is no excusable neglect present here.  To the contrary, the record indicates a

13 purposeful and self-serving effort by Defendant to evade service.  As discussed *supra*, Defendant

14 was ultimately served via his wife at their shared residence, despite her best efforts.  Defendant is

15 very likely aware of the existence of this suit as Plaintiff has communicated about it with

16 Longview's attorney in the entity actions (*see* Dkt. No. 12-1 at 117), yet Defendant chooses not

17 to participate.  Factor six favors Plaintiff.

18                   Factor 7: The Preference for Resolving Disputes on the Merits

19         The final *Eitel* factor recognizes "the strong policy underlying the Federal Rules of Civil

20 Procedure favoring decisions on the merits."  *Eitel*, 782 F.2d at 1472.  However, Defendant's

21 failure to participate in this case makes disposition on the merits practically impossible.  The

22 seventh factor weighs against default judgement, though this does not alter the result.  *See*

23 *PepsiCo, Inc. v. California Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002) ("the mere

24

1 | existence of Fed.R.Civ.P. 55(b) indicates that 'this preference [for merits decisions], standing
2 | alone, is not dispositive.'").

3 | Summary of *Eitel* Factors

4 | The weight of the *Eitel* factors clearly favors Plaintiff.

5 | **IV      ORDER**

6 | Based on the foregoing, the Court orders as follows:

7 |     1.  The Court GRANTS the motion for default judgment (Dkt. No. 10) to

8 |        Plaintiff.

9 |     2.  The Court CONFIRMS the foreign arbitral award (Dkt. No. 1-1), pursuant

10 |        to the FAA, 9 U.S.C. § 207.

11 |     3.  The Court ORDERS that Plaintiff is awarded:

12 |          a.  USD $30,000,000 (or the equivalent amount in RMB, at the

13 |            prevailing exchange rate on the date of payment) in principal;

14 |          b.  USD $5,746,575.34 in pre-award interest, calculated at a rate of

15 |            20% per annum from June 16, 2023 to June 1, 2024;

16 |          c.  Post-award interest calculated at a rate of 20% per annum from the

17 |            date of the award, June 1, 2024, until the date of repayment in full;

18 |          d.  USD $250,000 in costs, fees, and/or expenses.

19 | The Clerk shall enter JUDGMENT and close the case.

20 | Dated this 27th day of January, 2025.

21 |

22 |

23 | David G. Estudillo
   | United States District Judge

24 |

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 10) AND CONFIRMING
ARBITRATION AWARD (DKT. NO. 1.) - 13